IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Zee Zee Zela Zurro, ) | Case No. 8:11-cv-682-TMC-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Major Joe Norris, Capt. Brunason, Nurse ) | |
| Jeannie Hugher, Nurse G. Kelly, ) | |
| Dr. Wilner, Dr. Anderson, Sgt. Debra ) | |
| Hines, Lt. Marilyn James, Lt. Michael ) | |
| Brown, CO Brandon Doyle, CO Nicole ) | |
| Eaddy, CO B.J. Tanner, Sgt. Paige, Lt. ) | |
| Bruce Redden, CO Dwight Talton, CO ) | |
| Greg Parish, CO K. Canty, CO Patrick ) | |
| McIver, CO Joseph Thompson, CO Travis ) | |
| Taylor[1], CO NFN Brown, CO NFN ) | |
| Brown #2, CO NFN Hall, CO NFN Barr, ) | |
| CO NFN Miles, CO NFN Free, CO NFN ) | |
| Feagin, CO NFN Ingrahm, CO NFN Morgan,) | |
| CO NFN Timmons, CO NFN Smith, CO ) | |
| NFN Carter, CO NFN Bing, CO NFN ) | |
| Speight, CO NFN Bulgajewski, CO NFN ) | |
| Johnson, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on a motion for summary judgment filed by the Florence County Detention Center ("FCDC") Defendants.[2]  [Doc. 34.]  Plaintiff is

---

[1] CO Travis Taylor is identified as CO Travis Tyler in Defendant's motion for summary judgment.

[2] The following Defendants joined in the motion for summary judgment: Major Joe Norris ("Norris"), Capt. Brunson ("Brunson") (incorrectly identified as Capt. Brunason), Nurse Jeanie Hughes ("Hughes") (incorrectly identified as Jeannie Hugher), Nurse G. Kelly ("Kelly"), Sgt. Debra Hines ("Hines"), Lt. Marilyn James ("James"), Lt. Michael Brown ("Lt. Brown"), CO Brandon Doyle ("Doyle"), CO Nicole Eaddy ("Eaddy"), CO B.J. Tanner ("Tanner"), Sgt. Paige ("Paige"), Lt. Bruce Redden ("Redden"), CO Dwight Talton ("Talton"), CO Greg Parish ("Parish"), CO K. Canty ("Canty"), CO Patrick McIver ("McIver"), CO Joseph Thompson ("Thompson"), CO Travis Tyler ("Tyler"; see *supra* note 1), CO NFN Barr ("Barr"), CO NFN Bing ("Bing"), CO NFN Brown ("CO Brown"), CO NFN Brown #2 ("CO Brown #2"), CO NFN Bulgajewski ("Bulgajewski"), CO NFN Carter ("Carter"), CO NFN Free ("Free"), CO NFN Feagin ("Feagin"), CO NFN Hall ("Hall"), CO NFN Ingrahm ("Ingrahm"), CO NFN Johnson ("Johnson"), CO NFN Miles ("Miles"), CO NFN Morgan ("Morgan"), CO NFN Smith ("Smith"), CO NFN Speight ("Speight"), and CO NFN Timmons ("Timmons") (collectively, "the

proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

Plaintiff filed this action on February 25, 2011,[3] alleging claims of excessive force, pain and suffering, emotional distress, and cruel and unusual punishment. [Doc. 1.] On August 30, 2011, the FCDC Defendants filed a motion for summary judgment. [Doc. 34.] On August 31, 2011, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 35.] On September 22, 2011, Plaintiff filed a motion for extension of time to file a response, seeking an additional sixty days, based on his limited access to the prison law library.

---

FCDC Defendants"). However, summonses were returned unexecuted as to Barr, Bing, CO Brown, CO Brown #2, Bulgajewski, Canty, Carter, Feagin, Free, Hall, Hines, Hughes, Ingrahm, Johnson, Miles, Morgan, Smith, Speight, Tanner, and Timmons. Below, the Court addresses the effect of the failed service of process as to the FCDC Defendants whose summonses were returned unexecuted. *See infra* pp. 9–11.

There is no evidence that Defendants Dr. Wilner ("Dr. Wilner") and Dr. Anderson ("Dr. Anderson") were ever served with the Complaint, and Drs. Wilner and Anderson are not parties to the motion for summary judgment. Further, the docket does not reflect that the summonses as to Drs. Wilner and Anderson were returned unexecuted. However, Plaintiff's Complaint contains no allegations against Dr. Wilner or Dr. Anderson. Because in § 1983 actions "liability is personal, based upon each defendant's own constitutional violations," *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001), Plaintiff's Complaint should be dismissed against Drs. Wilner and Anderson because Plaintiff has failed to make any allegations against these individuals; they only appear in the caption of the Complaint, *see* 28 U.S.C. § 1915(e)(2)(B)(ii) (stating that, with respect to proceedings in forma pauperis, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted"). Therefore, the Court recommends that Plaintiff's Complaint be dismissed as to Drs. Wilner and Anderson.

[3] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the possible filing dates in the light most favorable to Plaintiff, the Court considers Plaintiff's filings as filed on the date Plaintiff dated the specific document.

[Doc. 37.] On September 30, 2011, the Court granted Plaintiff's motion in part, granting Plaintiff an additional forty-five days, or until November 21, 2011, to respond to the FCDC Defendants' motion for summary judgment. [Doc. 41.] On October 24, 2011, Plaintiff filed another motion for extension to time to respond to the FCDC Defendants' motion, stating the extension was necessary due to his limited access to the use of the prison library. [Doc. 47.] On November 4, 2011, the Court denied Plaintiff's motion for extension and directed Plaintiff to file a response on or before November 21, 2011. [Doc. 49.] Plaintiff filed a response to the motion for summary judgment on November 16, 2011. [Doc. 52.] The FCDC Defendants filed a reply on December 8, 2011. [Doc. 53.] Accordingly, the FCDC Defendants' motion is now ripe for review.

## BACKGROUND

At all times relevant to the issues raised in Plaintiff's Complaint, he was incarcerated at FCDC. [*See* Doc. 1.] Plaintiff sets forth his allegations as eight separate "incidents," which are outlined below:

> (1) On March 17, 2009, while talking to the inmate in the cell next to his, Plaintiff was sprayed three times by Paige and twice by Tanner. [*Id.* at 3.] Plaintiff was not allowed to take a shower until twenty-four hours after the incident. [*Id.*] Plaintiff was placed in a restraining chair from 11:00 p.m. until 2:00 p.m. the following day by several unknown officers. [*Id.*]
>
> (2) On March 19, 2009, while escorting Plaintiff, who was handcuffed and shackled and had health issues affecting his legs and hip, Doyle forced Plaintiff to walk faster by pushing him. [*Id.*] Plaintiff had to stop walking because the shackles were cutting and hurting his ankles due to the force Doyle was using to push Plaintiff. [*Id.*] When Plaintiff and Doyle reached Plaintiff's cell door, Doyle sprayed Plaintiff in the face with pepper spray, pushed Plaintiff into the cell, and closed the door. [*Id.*] Doyle and Eaddy, James, Hines, Lt. Brown, McIver, Thompson, and Tyler placed Plaintiff in a restraining chair. [*Id.* at 4.] All of these Defendants denied Plaintiff's request to take a shower. [*Id.*] Plaintiff was escorted to medical while strapped in the

3

restraining chair. [*Id.*]  Plaintiff refused to have his blood taken and receive a shot of "Haldol," but Brunson told Plaintiff that Plaintiff was going to get the shot and have his blood taken, and Hughes forced the shot of "Haldol" on Plaintiff and took his blood.  [*Id.*]  Brunson stated Norris wanted Plaintiff to get the shot.  [*Id.*]  Plaintiff was escorted back to his cell and stayed in the restraining chair from 9:40 a.m. until 4:30 p.m.

(3) On March 20, 2009, unidentified officers put Plaintiff in a restraining chair and took him to medical, where Hughes gave Plaintiff a shot of "Prolixin" over his objections.  [*Id.* at 4–5.]  When Plaintiff asked why Hughes kept giving Plaintiff shots for no reason, Hughes stated that Norris signed her paychecks, not Plaintiff.  [*Id.* at 5.]

(4) On April 22, 2009, unidentified officers took Plaintiff to medical while he was in a restraining chair.  [*Id.*]  Kelly gave Plaintiff a shot of "Prolixin" over Plaintiff's objections, stating the doctor ordered that Plaintiff was to get the shot.  [*Id.*]

(5) From March 17, 2009 to May 14, 2009 and from December 15, 2009 to April 23, 2010, a little red dot was placed on Plaintiff's cell door, denoting Plaintiff was high risk.  [*Id.*]  Plaintiff was only allowed one hour of recreation a week, for thirty minutes on Mondays and Thursdays, per Lt. Brown.  [*Id.*]

(6) On January 26, 2009, Plaintiff was placed on maximum segregation for no reason.  [*Id.* at 6.]  Hines and Redden told Plaintiff that he was going to lock-up until further notice.  [*Id.*]

(7) From January 28, 2009 through April 23, 2010, and over other unspecified dates, Plaintiff received medication from twenty officers, including Eaddy, Doyle, McIver, Carter, Free, CO Brown, CO Brown #2, Talton, Barr, Hall, Timmons, Smith, Johnson, Tanner, Parish, Miles, Canty, Feagin, Ingrahm, Morgan.  [*Id.*]

(8) On January 8, 2010, Plaintiff was going to his cell for lock down when Bulgajewski hit Plaintiff with his cell door.  [*Id.*]  Plaintiff asked Bulgajewski why she hit Plaintiff with the door and she said "if your black ass was in the door it wouldn't have hit [you]."  [*Id.*]  Plaintiff told Bulgajewski not to talk to him like that.  [*Id.*]  Bulgajewski told Plaintiff to pack up his stuff because he was going to maximum segregation.  [*Id.*]  When Speight was handcuffing Plaintiff, Plaintiff had his legal mail in his hand in an envelope, and Speight snatched the envelope out of Plaintiff's hand and punched Plaintiff.  [*Id.* at 6–7.]  Plaintiff and Speight got into a physical altercation.  [*Id.* at 7.]  When back-up officers came and Plaintiff had one hand in handcuffs, Plaintiff stated that he was going to put his other hand in the handcuffs and asked

Redden "to get C/O Speight" because Plaintiff feared Speight would jump him once he was handcuffed. [*Id.*] As Plaintiff put his other hand in the handcuffs, Speight punched him in the face. [*Id.*] Plaintiff was then escorted to maximum segregation. [*Id.*] Plaintiff requested medical treatment from Redden and Barr but was denied medical treatment. [*Id.*]

Plaintiff seeks $100 million from FCDC for excessive force, pain and suffering, emotional distress, and cruel and unusual punishment. [*Id.* at 8.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a

State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

>  (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Unserved FCDC Defendants**

The FCDC Defendants contend Plaintiff's Complaint should be dismissed as to the unserved FCDC Defendants. [Doc. 34-1 at 4.] The Court agrees.

Under Rule 12(b) of the Federal Rules of Civil Procedure, "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may also assert the following defenses by motion: . . . (5) insufficient service of process . . . ." Fed. R. Civ. P. 12(b). A party waives a Rule 12(b)(5) defense by failing to assert the defense in a motion made pursuant to Rule 12 or by failing to include the defense in a responsive pleading. Fed. R. Civ. P. 12(h)(1)(B); *see also Pusey v. Dallas Corp.*, 938 F.2d 498, 501 (4th Cir. 1991) ("[W]e hold that by failing to raise the defense that service of process was untimely under Rule 4(j) either in a pre-answer motion or, if no such motion is made, then in its answer, a defendant waives that defense and submits to the personal jurisdiction of the court."). However, "a party does not waive his right to service of process whenever an attorney appears on his behalf," *Leach v. BB & T Corp.*, 232 F.R.D. 545, 551 (N.D.W. Va. 2005) (citing *Kiro v. Moore*, 229 F.R.D. 228, 231 (D.N.M.

9

2005)), and therefore, a party does not waive a Rule 12(b)(5) defense as long as the defense is asserted by way of the answer or a pre-answer motion, *see id.*

In a case in which the district court permits the plaintiff to file in forma pauperis, the district court must direct the United States Marshals Service to effectuate service of process. 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3); *see Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010) ("In forma pauperis plaintiffs must rely on the district court and the U.S. Marshals Service to effect service of process according to 28 U.S.C. § 1915."). However, the plaintiff must provide sufficient information to locate the defendant with "reasonable effort." *Richardson v. Johnson*, 598 F.3d 734, 738–40 (11th Cir. 2010); *see also Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) ("If the Marshals Service could have obtained the new addresses of the defendants with reasonable efforts, the marshals' failure to serve process was 'good cause' for purposes of [Fed. R. Civ. P.] 4(m)," excusing the plaintiff's failure to timely serve the defendants.); *Greene v. Holloway*, 210 F.3d 361, 2000 WL 296314, at *1 (4th Cir. 2000) (unpublished table opinion) (reversing district court's decision that service was insufficient after prisoner argued he did all that was required under *Graham* to effect service). Further, Rule 4(m) states

> Time Limit for Service. If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m).

The record reveals summonses were returned unexecuted as to Barr, Bing, CO Brown, CO Brown #2, Bulgajewski, Canty, Carter, Free, Feagin, Hall, Hines, Hughes, Ingrahm, Johnson, Miles, Morgan, Smith, Speight, Tanner, and Timmons. [Doc. 26.] The FCDC Defendants asserted a Rule 12(b)(5) defense in their answer [Doc. 21 ¶ 14], and as stated above, the FCDC Defendants argued in their motion for summary judgment that these Defendants should be dismissed based on insufficient service of process [Doc. 34-1 at 4]. However, Plaintiff failed to address this argument in his response in opposition to the motion, and Plaintiff has not otherwise shown good cause for the failure of service upon these Defendants within 120 days of the filing of the Complaint. Accordingly, the unserved FCDC Defendants should be dismissed without prejudice pursuant to Rule 4(m).

**Exhaustion of Administrative Remedies**

The FCDC Defendants contend they are entitled to summary judgment because Plaintiff failed to exhaust administrative remedies prior to filing this action. [Doc. 34-1 at 5–7.] The Court agrees.[4]

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

---

[4] The FCDC Defendants also contend Plaintiff's Complaint should be dismissed with respect to Carter, Free, Eaddy, Brown, Brown, Talton, Barr, Hall, Timmons, Doyle, Smith, Johnson, Tanner, Parish, Miles, Canty, Feagin, Patrick, McIver, Ingrahm, Morgan, and Norris because the Complaint fails to set forth any specific factual allegations as to these Defendants. [Doc. 34-1 at 4.] While Defendants are correct in stating that the Complaint does not explicitly state a constitutional claim as to any of these Defendants, the Court notes that the Complaint fails to connect any Defendant with a specific violation of Plaintiff's constitutional rights. Plaintiff outlines several incidents [Doc. 1 at 3–7] and concludes his Complaint by stating that his damages are "excessive force, pain and suffering, emotional distress, and cruel and unusual punishment" [*id.* at 8]. Accordingly, the Court is left to connect the factual allegations with the corresponding constitutional violation, and because the Court must liberally construe Plaintiff's pleadings, the Court declines to address whether Plaintiff's Complaint should be dismissed based on a lack of personal allegations concerning the Defendants listed above.

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule"

and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

With respect to this case, FCDC has a grievance procedure in place to allow inmates to grieve to the administration any issues inmates have concerning the conditions of their confinement. [Doc. 34-3 ¶ 3.] The grievance procedure first requires the inmate

13

to fill out an inmate request form stating the grievance. [*Id.* ¶ 4.] The grievance form is then taken to the appropriate person, determined by the allegation(s) in the grievance. [*Id.* ¶ 5.] Upon receiving an initial findings response, the inmate can appeal the grievance to the Jail Manager. [*Id.* ¶ 6.]

Norris has averred Plaintiff filed several "Inmate Request Forms" and received responses from the appropriate persons. [*Id.* ¶ 7.] At no time did Plaintiff appeal the initial findings or response to the Jail Administrator.[5] [*Id.* ¶ 8; *see also id.* at 4–6 (Plaintiff's inmate request forms).] In response to the FCDC Defendants' argument that Plaintiff failed to exhaust his administrative remedies, Plaintiff provided only the unsupported argument that he "did exhaust afforded Available Administrative Remedies." [Doc. 52 at 2.] Plaintiff claims he submitted several request forms/grievances but never received a response and many of the forms were thrown away. [*Id.* at 2–3.] Plaintiff alleges prison officials "obstructed his attempts to exhaust or that he was prevented from exhausting because procedures for processing grievances weren't followed." [*Id.* at 3.] However, Plaintiff failed to provide any evidence that he did submit inmate request forms or grievances concerning his claims or any evidence of obstruction of his attempts to grieve his complaints. Accordingly, Plaintiff has failed to demonstrate a genuine issue of material fact to overcome the FCDC Defendants' motion for summary judgment.

---

[5] Norris alternatively referred to the appropriate party to appeal grievances to as Jail Manager [Doc. 34-3 ¶ 6] and Jail Administrator [*id.* ¶ 8].

While the FCDC Defendants submitted evidence to show Plaintiff did file several grievance forms,[6] there is no evidence Plaintiff followed the process through to completion, i.e., that Plaintiff appealed the initial determination to the Jail Administrator, which is required to show exhaustion. A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. *Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006). For the foregoing reasons, the FCDC Defendants' motion for summary judgment should be granted based on Plaintiff's failure to exhaust.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the FCDC Defendants' motion for summary judgment be GRANTED and that the Complaint be DISMISSED as to Dr. Wilner and Dr. Anderson.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

December 9, 2011
Greenville, South Carolina

---

[6]Plaintiff's request forms/grievances submitted by the FCDC Defendants [Doc. 34-3 at 4–6] demonstrate Plaintiff failed to grieve all the issues raised in his Complaint; Plaintiff only submitted request forms with respect to the fifth and sixth incidents outlined above. Therefore, based on the record before the Court, the only claims Plaintiff possibly could have exhausted are those related to the fifth and sixth incidents described in his Complaint, but, as noted above, Plaintiff failed to appeal any grievance to the Jail Administrator, and accordingly, Plaintiff has failed to exhaust administrative remedies with respect to his claims.